UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SEAN M. SPICER *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>JOSEPH R. BIDEN, JR.,<br>President of the United States, *et al.*,<br><br>*Defendants*. | No. 21-cv-2493 (DLF) |

**MEMORANDUM OPINION AND ORDER**

On September 8, 2021, President Joseph Biden removed plaintiffs Sean Spicer and Russell Vought from the Board of Visitors to the United States Naval Academy. *See* Compl. ¶¶ 28–30, Dkt. 1. In this action, the plaintiffs challenge their removals and seek an injunction requiring the President and other federal officials to treat them "as present Board members." Pls.' Mot. for a Prelim. Injunction at 8, Dkt. 3-1. Before the Court is the plaintiffs' Motion for a Preliminary Injunction, Dkt. 3. For the following reasons, the Court will deny the motion.

**I.     BACKGROUND**

Congress created the Board of Visitors to advise the President on the "state of morale and discipline" at the Academy, as well as its "curriculum, instruction, physical equipment, fiscal affairs, [and] academic methods." 10 U.S.C. § 8468(e). To that end, Congress directed the Board to "visit the Academy annually" and prepare a "written report" for the President on both the above matters and "other matters relating to the academy that [it] decides to consider." *Id.* § 8468(d)–(f). Congress also specified the Board's membership. In addition to several Senators and Representatives, *see id.* § 8468(a)(1)–(4), the Board includes "six persons designated by the

President," *id.* § 8468(a)(5). Those persons "serve for three years each" in staggered terms "except that any member whose term of office has expired shall continue to serve until his successor is appointed." *Id.* § 8468(b).

On September 8, 2021, the plaintiffs received materially identical emails from Katherine Petrelius, a Special Assistant to the President. *See* Compl. ¶ 28. The emails requested the plaintiffs' resignations from the Board and stated that, "[i]f [the President does] not receive your resignation by end of day today, you will be terminated." *Id.* The emails also attached formal letters from Catherine Russell, the Director of the White House Presidential Personnel Office. *See id.* ¶ 29. Those letters similarly requested the plaintiffs' resignations "by the close of business today" and added that, "[s]hould [the President] not receive your resignation[s], your position[s] with the Board will be terminated effective 6:00 pm tonight." Compl. Ex. 3 (Letter from Russell to Spicer), Dkt. 1-3; *accord* Compl. Ex. 4 (Letter from Russell to Vought), Dkt. 1-4. Because the plaintiffs did not resign from the Board by that deadline, *see* Compl. ¶ 30, their positions on the Board were terminated.

On September 23, 2021, the plaintiffs filed this civil action against the President, Petrelius, Russell, and two other government officials—Charles Ruppersberger, in his official capacity as the Chairman of the Board, and Raphael Thalakottur, in his official capacity as the Board's Designated Federal Officer (DFO). *See* Compl. ¶¶ 10–14. The plaintiffs' complaint noted that the Board had "meetings scheduled on September 27, 2021, and December 6, 2021," *id.* ¶ 23, and expressed an interest in seeking emergency relief, *see id.* ¶ 5. The plaintiffs ultimately filed their motion for a preliminary injunction on November 3, 2021. Dkt. 3. That motion is now ripe for review.

## II. LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To obtain the remedy, a plaintiff must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20; *see also League of Women Voters of United States v. Newby*, 838 F.3d 1, 6 (D.C. Cir. 2016). The plaintiff "bear[s] the burdens of production and persuasion" with respect to each of these factors. *Qualls v. Rumsfeld*, 357 F. Supp. 2d 274, 281 (D.D.C. 2005) (citing *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004)). The last two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. ANALYSIS

### A. The Plaintiffs Have Article III Standing

Before reaching the merits of the plaintiffs' motion, the Court must determine whether the plaintiffs have Article III standing. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). To establish standing, the plaintiffs must demonstrate that they have suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). They must also establish that there is "a causal connection between the injury and the conduct complained of" and that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (internal quotation marks and citation omitted). Each of these elements "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *Id.* at 561. Accordingly, in moving for

a preliminary injunction, the plaintiffs must show a "substantial likelihood of standing" under the same "heightened standard" that applies when "evaluating a motion for summary judgment." *EPIC v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 377 (D.C. Cir. 2017) (citation omitted).

Here, it is undisputed that the removal from a federal office is an actual and concrete injury. *See Swan v. Clinton*, 100 F.3d 973, 976 (D.C. Cir. 1996). Likewise, all agree that the defendants either removed or purported to remove the plaintiffs from the Board of Visitors. *See* Letter from Russell to Spicer; Letter from Russell to Vought. Whether the plaintiffs' injuries are redressable, however, is a closer question. As a general matter, federal courts lack jurisdiction to "enjoin the President in the performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992) (Scalia, J., concurring) (concluding that "the President and the Congress . . . may not be ordered to perform particular executive or legislative acts at the behest of the Judiciary").[1] In addition, because Petrelius and Russell lack authority over both appointments to the Board and the Board's operations, there is no order this Court could issue against them that would redress the plaintiffs' injuries. *See Lujan*, 504 U.S. at 560–61. Accordingly, the key redressability issue in this case is whether the plaintiffs can obtain effective relief against Ruppersberger or Thalakottur.

The Court reads *Swan v. Clinton*, 100 F.3d 973, to allow relief against those officials. In *Swan*, the D.C. Circuit held that a former member of the National Credit Union Administration had standing to challenge his removal from the agency. *See id.* at 976–81. In doing so, the

---

[1] The Supreme Court in *Jackson* "left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty." *Franklin*, 505 U.S. at 802 (quoting *Jackson* 71 U.S. at 498–99). For the reasons discussed below, this Court need not address whether this case concerns a ministerial duty.

4

Circuit did not decide whether it could require the President to reinstate the plaintiff, *see id.* at 977–79, but instead concluded that relief against "subordinate officials" in the agency would "substantially redress [the plaintiff's] injury," *id.* at 980.  On that point, the Circuit noted that the plaintiff sought relief against the agency's Executive Director, who was responsible for coordinating its senior staff.  *See id.* at 979.  The Circuit also read the complaint's request "for such additional relief as the court shall deem just and proper" to "encompass relief against subordinate branch officials not named as parties."  *Id.* at 980 (citation omitted).  Finally, it found that those subordinate officials were subject to suit under the "*Larson–Dugan* exception," which provides that "sovereign immunity does not apply as a bar to suits alleging that an officer's actions were unconstitutional or beyond statutory authority."  *Id.* at 981 (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949), and *Dugan v. Rank*, 372 U.S. 609, 621–23 (1963)).  Accordingly, the Circuit concluded that it could grant effective relief to the plaintiff by requiring the agency's subordinate officials to "treat[] [him] as a member of the NCUA Board and allowing him to exercise the privileges of that office."  *Id.* at 980.

Following *Swan*, the Court could grant effective relief in this case by ordering Ruppersberger and Thalakottur, in their capacities as the Board's Chairman and DFO, to treat the plaintiffs as full members of the Board.  Like the Executive Director in *Swan*, Ruppersberger and Thalakottur have specific duties with respect to their agency.  As Chairman, Ruppersberger prepares the tentative agenda for each Board meeting and is principally responsible for preparing the Board's annual report to the President.  *See* Defs.' Resp. to Pls.' Mot. Ex. 2 (Bylaws of the Board of Visitors), at 3–4, Dkt. 6-2.  And as DFO, Thalakottur must "approve[] the call of each meeting, approve[] the meeting agenda, and attend[] each meeting."  *Id.* at 2.  To the degree that those officials lack the "authority to order the other Board members to treat [the plaintiffs] as []

5

Board member[s]," *Swan* favors reading the plaintiffs' complaint to encompass "subordinate branch officials not named as parties," 100 F.3d at 980.  All those officials fall under the *Larson-Dugan* exception for the same reasons that controlled in *Swan*.  *See id.* at 981.  And separation-of-powers concerns do not warrant departing from *Swan* here because, although Ruppersberger is a member of Congress, any injunction in this case would apply only in his capacity as a Board member.  *See* Defs.' Resp. at 42, Dkt. 6.  Finally, the Court need not address whether the plaintiffs have a cause of action because that issue does not go to Article III standing, *see Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014), and because the Court will deny the plaintiffs' motion on other non-jurisdictional grounds.

For those reasons, the Court holds that granting injunctive relief against Ruppersberger and Thalakottur would "substantially redress" the plaintiffs' injuries.  *Swan*, 100 F.3d at 980.  The plaintiffs accordingly have a substantial likelihood of Article III standing, and the Court may reach *Winter*'s four-factor test for the granting of preliminary injunctions.

**B.    The Plaintiffs Are Not Entitled to a Preliminary Injunction**

Starting with *Winter*'s first factor, the Court concludes the plaintiffs are unlikely to succeed on the challenge to their removals.  The Supreme Court has consistently held that "the power of removal from office is incident to the power of appointment" "absent a specific provision to the contrary."  *Carlucci v. Doe*, 488 U.S. 93, 95 (1988) (citation omitted); *see also Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021); *Keim v. United States*, 177 U.S. 290, 293 (1900).  Here, no provision specifically insulates Board members from removal.  *See* 10 U.S.C. § 8468.  In that respect, the Board's organic statute is unlike both Article III of the Constitution, which provides that federal judges "shall hold their offices during good behavior," U.S. Const. art. III, § 1, and the many federal statutes that allow only removal for cause, *see, e.g.*, 12 U.S.C. § 242

(allowing removal "for cause by the President"); 15 U.S.C. § 41 (allowing removal "for inefficiency, neglect of duty, or malfeasance in office"). Moreover, although Congress directed that Board members "serve for three years each" on staggered terms, 10 U.S.C. § 8468(b), such term-of-office provisions do not constrain the President's removal power, see Parsons v. United States, 167 U.S. 324, 342–43 (1897). To the contrary, they serve only to limit the length of an officeholder's term, subject to other conditions that a statute may impose. See id. Accordingly, because no statute insulates Board members from removal, the President had the power to remove the plaintiffs in this case.

The Supreme Court squarely held in Parsons that term-of-office provisions do not independently limit the President's removal power. By way of background, the statute in Parsons provided that district attorneys "shall be appointed for a term of four years." 167 U.S. at 327–28 (citation omitted). At issue in the case was whether that statute insulated district attorneys from removal within their terms, or else provided only that their terms "shall not last longer than four years, subject to the right of the President to sooner remove." Id. at 328. After considering "the president's power of removal, and the debates which have taken place in congress in regard to it," id. at 328, the Court took the latter view, see id. at 342–43. Specifically, it gave the statute "a construction of limitation, and not of grant; a construction by which no more than a period of four years is permissible, subject, in the meantime, to the power of the president to remove." Id. at 342. For that reason, the Court held that the President had the authority to remove district attorneys at will. See id. at 344.

Myers v. United States, 272 U.S. 52 (1926), confirms Parsons' holding. In that case, the Supreme Court addressed the statement in Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803), that a justice of the peace's "appointment was not revocable" because "the law creating the

7

office gave [him] a right to hold it for five years." *Myers*, 272 U.S. at 141 (quoting *Marbury*, 5 U.S. at 162). Recognizing the tension between that statement and *Parsons*, *Myers* held that, if the statement "was more than a dictum," *Parsons* "overrule[d] it." 272 U.S. at 143. *Myers* thus clarified that *Parsons* governs the construction of all term-of-office provisions, not only the provision that was directly before the *Parsons* Court. *See also id.* at 241 (Brandeis, J., dissenting) (agreeing that "in the absence of a provision expressly providing for the consent of the Senate to a removal, the clause fixing the tenure will be construed as a limitation, not as a grant"). And in that respect, it forecloses the plaintiffs' effort in this case to confine *Parsons* to the "unusual drafting history of the relevant provision," Pls.' Mot. at 19.

The Supreme Court's recent removal cases are also consistent with a broad reading of *Parsons*. When *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), held that the CFRB Director's "removal protections" were both unconstitutional and "severable from the other provisions of Dodd-Frank," *id.* at 2211, no Justice suggested that the decision invalidated the provision of Dodd-Frank that assigned the Director "a term of 5 years," 12 U.S.C. § 5491(c)(1). To the contrary, the decision made clear that the "removal protection" at issue was the affirmative restriction on the Director's removal, as distinct from the length of the Director's term. *See Seila Law*, 140 S. Ct. at 2204 (listing the length of his term among the "other features of the CFPB [that] combine to make the Director's removal protection even more problematic"). Likewise, *Collins v. Yellen*, 141 S. Ct. 1761, 1771 (2021), held unconstitutional the "statutory restriction on the President's power to remove the FHFA Director," without modifying the default length of the Director's term. *Id.* at 1778. And *Free Enterprise Fund v. PCAOB*, 561 U.S. 477, 501 (2010), concerned only the "unusual situation . . . of two layers of for-cause tenure," not the length of those individual tenures. *Id.* at 501. In sum, because the above cases did not strike

8

down their respective term-of-office provisions, they reinforce the most natural reading of *Parsons*: that such provisions are not standalone restrictions on the President's removal power.

Several courts of appeals have also read *Parsons* to hold that term-of-office provisions do not themselves limit the removal power. The Third Circuit has held that "a fixed term merely provides a time for the term to end." *Pievsky v. Ridge*, 98 F.3d 730, 734 (3d Cir. 1996). The D.C. Circuit has agreed that "term limits do not always provide removal protection, at least when traditional executive branch officials are involved." *Swan*, 100 F.3d at 982; *see also PHH Corp. v. CFPB*, 881 F.3d 75, 200 n.20 (D.C. Cir. 2018) (en banc) (Kavanaugh, J., dissenting) ("[term-of-office] provisions do not prevent the President from removing at will a Director at any time during the Director's tenure"). And although the D.C. Circuit has recognized "fixed terms of office" as one indicia of removal protection, *Kalaris v. Donovan*, 697 F.2d 376, 396 n.77 (D.C. Cir. 1983) (listing five indicia in total), the plaintiffs have not identified any case in which a term-of-office provision alone sufficed to limit the President's removal power.

On that point, each of the plaintiffs' authorities is distinguishable. *Humphrey's Executor v. United States*, 295 U.S. 602 (1935), concerned a statute that combined a "definite term" of office with an express allowance of removal only "for cause." *Id.* at 623. *Wiener v. United States*, 357 U.S. 349 (1958), found a removal restriction "on the rationale that the [relevant agency] was an adjudicatory body," not due to any term-of-office provision. *Collins*, 141 S. Ct. at 1783 n.18 (citing *Weiner*, 357 U.S. at 353, 355–56). The agency officials in *Reagan v. United States*, 182 U.S. 419 (1901), "[held] office neither for life nor for any specified time," which meant that the Court had no cause to interpret any term-of-office provision. *Id.* at 426. *Marbury*'s statement on term-of-office provisions is either "dictum" or "overrule[d]" in *Parsons*. *Myers*, 272 U.S. at 143 (citing *Marbury*, 5 U.S. at 162). *In re Hennen*, 38 U.S. 230 (1839), is

9

inapposite both because the statute at issue contained "no express limitation . . . upon the tenure of the [relevant] office," *id.* at 258–59, and because the case preceded *Parsons*. And although the plaintiffs discuss a wide array of historical materials, *see* Pls.' Mot. at 19–24, those materials cannot trump a controlling decision of the Supreme Court. For those reasons, this Court agrees with the government that term-of-office provisions do not themselves limit the removal power

Moreover, nothing in the Board's organic statute warrants treating it as a special case. To start, the only role of Board is to advise the president on the performance of a quintessentially executive function: the command and supervision of the Armed Forces. *See* 10 U.S.C. § 8468(d)–(f). Because Board members lack any non-advisory authority, Congress had little cause to insulate them from removal. *See Wiener*, 357 U.S. at 353 (holding that the "nature of the [agency's] function" can be a "reliable factor for drawing an inference regarding the President's power of removal"). Further, because Board members are plainly executive officials, barring their removal would raise "serious constitutional concerns," *see Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Const. Trades Council*, 485 U.S. 568, 577 (1988), given the President's "power of appointment and removal of executive officers," *Myers*, 272 U.S. at 163–164. Finally, although the plaintiffs argue that allowing the removal of Board members would render the relevant term-of-office provision superfluous, *see* Pls.' Mot. at 25–26, the surplusage canon applies only when statutory language is ambiguous, *see Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992); *Begay v. United States*, 553 U.S. 137, 153 (2008) (Scalia, J., concurring). It accordingly has no application in this context, where the President's removal power persists "absent a *specific provision* to the contrary," *Carlucci*, 488 U.S. at 95 (emphasis added). The Court thus concludes that the Board's organic statute does not insulate Board members from the President's removal power.

The "failure to show a likelihood of success on the merits alone is sufficient" to deny a preliminary injunction. *Hudson v. Am. Fed'n of Gov't Emps.*, 308 F. Supp. 3d 121, 127 (D.D.C. 2018) (citing *Ark. Dairy Co-op Ass'n, Inc. v. USDA*, 573 F.3d 815, 832 (D.C. Cir. 2009)).  But even if the merits of this case were closer, the plaintiffs have not met their burden of showing either that they face an irreparable injury or that the public interest favors a preliminary injunction.  *See Winter*, 555 U.S. at 20.  Although the plaintiffs express an interest in attending a Board meeting on December 6, 2021, they give no account of why missing that meeting would be personally injurious.  *See* Compl. ¶ 23; Pls.' Mot. at 36; Pls.' Reply at 24–25, Dkt. 7; *see also Newby*, 838 F.3d at 8 (noting that irreparable harm must be "certain and great").  And although the plaintiffs argue that their removal from the Board would "silence dissenting views," Pls.' Reply at 25, they give no indication that their views on the governance of the Naval Academy actually differ from the other Board members'.  Nor do they explain how it would serve the public interest to present advice to the President—the primary function of the Board, *see* 10 U.S.C. § 8468(f)—that the President does not intend to consider.  For the foregoing reasons, the Court concludes that the plaintiffs are not entitled to the "extraordinary remedy" of a preliminary injunction.  *Winter*, 555 U.S. at 22.

## CONCLUSION

Accordingly, it is

**ORDERED** that the plaintiffs' Motion for a Preliminary Injunction, Dkt. 3, is **DENIED**. It is further

**ORDERED**, upon consideration of the parties' Consent Motion to Hold Defendants' Deadline in Abeyance, Dkt. 8, that the parties shall submit a proposed schedule for further proceedings on or before December 17, 2021.

**SO ORDERED.**

_____
DABNEY L. FRIEDRICH
United States District Judge

December 4, 2021